IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON


REVA BAILEY,

       Plaintiff,

V.                               CIVIL ACTION NO. 3:04-1034


JOANNE BARNHART,
Commissioner of Social Security,

       Defendant.


**<u>FINDINGS AND RECOMMENDATION</u>**


In this action, filed under the provisions of 42 U.S.C. §1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her application for supplemental security income based on disability.  The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed her application on June 7, 1995, alleging disability as a consequence of fibromyalgia, nerves, depression, poor memory and concentration.  On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found her not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review.  Thereafter, plaintiff filed an action seeking review of the Commissioner's decision.[1] The Court, perceiving deficiencies in the administrative proceedings, remanded the case to the Commissioner.  While the case was pending before this Court, plaintiff filed a second application

---

[1] See, Civil Action No. 3:98-0973.

which was granted with a disability onset date of April 1, 1999.  Following a supplemental hearing on the present claim at which plaintiff was not represented, an administrative law judge again found her not disabled.   The Appeals Council, however, remanded the case for another hearing and disposition by a different administrative law judge.   Following the supplemental hearing and consideration of additional evidence, the administrative law judge determined that plaintiff was not disabled between June 7, 1995 and March 31, 1999.  This decision became final when the Appeals Council denied plaintiff's request for review.   She then filed this action seeking review of the decision.

During the relevant period, plaintiff was thirty-nine to forty-three years of  age and had obtained a high school education.  She has no past relevant employment experience.   In his decision, the administrative law judge determined that plaintiff suffers from fibromyalgia, arthritic joint pain, major depressive disorder, dependent personality disorder traits, vitiligo causing pigmentation changes and pus breakouts with direct sun exposure,[2] and tension and migraine-type headaches, impairments he considered severe.   Concluding that plaintiff retained the residual functional capacity for a limited range of light level work,  and relying on Rule 202.20 of the medical-vocational guidelines and the testimony of a  vocational expert, the administrative law judge found that, prior to April 1, 1999, she was not disabled.

From a review of the record, it is apparent that the evidence provides substantial support for the Commissioner's decision.  As the administrative law judge noted, the evidence between June 7, 1995 and March 31, 1999, reflects that problems with fibromyalgia, including pain,

---

[2]  The administrative law judge apparently misunderstood the evidence as to plaintiff's skin condition.  There is no indication that the vitiligo, which caused pigment changes, was related to the pustular formations on plaintiff's hands, feet and other areas.

muscle aches and fatigue, and with depression/anxiety affected plaintiff the most.  Even so, the medical reports do not document many significant physical findings during this time, and, though mental symptoms were periodically more severe, they typically improved with treatment consisting of medication and counseling.

William Given, M.A., evaluated plaintiff for the Commissioner on August 22, 1995, and noted complaints of sadness and depression with crying spells throughout the day.  Mental status evaluation revealed, however, that plaintiff was pleasant and cooperative, "rather outgoing," talkative and that she smiled frequently.  Her mood was estimated to be mildly depressed. Inconsistent with these observations, this psychologist also reported that plaintiff cried during the clinical interview and through "almost the rest of the session."  Despite plaintiff's complaints, however, testing indicated concentration for easier tasks and recent and remote memory were intact, though she displayed some difficulty concentrating on more challenging material.  Mr. Given diagnosed depressive disorder not otherwise specified and features of post-traumatic stress disorder. He noted plaintiff's reports of a number of daily activities, consistent with documents she filed with her application.  These included cooking, household chores such as scrubbing and mopping, doing crafts, visiting with friends on the phone and going to a local bar once per week.  She stated that when she felt bad her daughter helped with chores.  Mr. Given also noted that plaintiff reported having good relationships with friends and family and remained involved with her daughter's school activities.  He concluded plaintiff could clearly communicate normally and had the capacity for normal relationships though she might withdraw somewhat due to depression.  He noted she had little difficulty with oral instructions.

Shortly before this evaluation, a consultative physical exam revealed only tenderness of the paravertebral muscles of the back and tenderness in the legs.  Range of motion was intact as was neurological functioning and X-rays of the lumbar spine and both knees were interpreted as normal.

In December of 1995, plaintiff reported to psychiatric examiners that she experienced intermittent periods of depression and anxiety and had been prescribed Prozac but had stopped it after two weeks because she thought it was causing excessive bleeding following her hysterectomy. Depressive disorder not otherwise specified was the diagnosis and plaintiff was prescribed Zoloft which she reported two months later had resulted in improvement in her condition.   Since she displayed a depressed mood, constricted affect and tearfulness, her diagnosis was changed to major depressive disorder, single episode, severe, and her medication was increased.  She was admitted to the hospital in June of 1996 with suicidal ideation and severe depression and the diagnosis was modified to  major depressive disorder, recurrent.  Plaintiff left the hospital against medical advice after three days.  She was improved after resuming Zoloft and was observed to be tearful during her next appointment with her psychiatrist in July of 1996.

Apparently the following month plaintiff was involved in a motor vehicle accident and reported experiencing increased pain.  These additional problems appeared to resolve without further difficulty, however.  She began treatment with Dr. James Becker on February 5, 1997, reporting the presence of severe pain related to fibromyalgia as well as terrible mood swings and episodes of severe depression.  She related, however, that she had been off her Zoloft for "quite a while."  Dr. Becker described plaintiff as tearful and somewhat agitated but noted she denied any specific areas of pain and was primarily experiencing mood problems.  He restarted Zoloft and

4

referred her to a counselor who was able to help plaintiff deal with a long history of abuse by her boyfriend with whom she wanted to end her relationship.

On February 12, 1997, Dr. Becker described plaintiff as "much better" mentally since she was back on Zoloft and noted she was improved physically as well.  He also reported that she had terminated her abusive relationship.  She was cheerful with an animated affect and appeared "very comfortable" with tenderness only over the left trapezius and a few trigger points in her upper back.  Ms. Bieler, plaintiff's therapist, offered similar observations as to mental functioning on March 7, 1997, and one month later Dr. Becker reported plaintiff was much less depressed and physically much more active, engaging in exercise and going dancing.  He characterized her depression as stable on Zoloft.  Exam in July of 1997 revealed full range of motion of the upper extremities, normal posture and gait and good range of motion in the lumbar area without tenderness.  Plaintiff was also noted to have greater social involvement at that time.

While she reported her fibromyalgia was acting up on October 20, 1997, plaintiff appeared "comfortable" and had only mild tenderness in the upper back, trapezius muscles and low back with full range of motion in the upper extremities.  When she returned a year later, the only additional finding was stiffness in her neck.  Though not seen again for nine months, plaintiff displayed only some spasm and restricted range of motion in her neck.  An X-ray of the cervical spine taken June 7, 1999, was interpreted as normal.

In Dr. Becker's most recent report, dated August 10, 1999, he notes that plaintiff related having good and bad days and explained there were some days she just could not function. She walked with a stiff posture but, consistent with earlier findings, had no low back tenderness and

only diffuse tenderness in the scapular areas.  Exercise was again recommended to improve her
flexibility.

In August of 1999, plaintiff underwent physical and mental consultative examinations
as part of the development of her April 1999 application.  The physical findings were not
significantly different from earlier exams but the psychological findings included markedly deficient
concentration.  A reviewing state agency psychologist subsequently assessed mental limitations
which he felt were consistent with disability and, as noted, the more recent claim was granted with
the disability onset date being the day plaintiff filed the application.

The administrative law judge sent the medical evidence to John P. Lesniak, M.D.,
a psychiatrist, for his expert opinion on plaintiff's mental impairments and related limitations prior
to April 1, 1999.  Dr. Lesniak opined that during the relevant period plaintiff had "some depressive
features usually from a secondary association with long-standing fibromyalgia."  He concluded this
did not meet or equal a listed impairment and assessed plaintiff's ability to make occupational,
cognitive and personal/social adjustments as mostly good to fair, with the latter defined as "limited
but satisfactory."

The administrative law judge, though finding plaintiff did suffer a "severe" mental
impairment during the relevant period, likewise found her depression was not of a severity to meet
or equal a listing.  He further found that her mental impairments imposed no more than mild
impairment of activities of daily living, a moderate loss in social functioning and concentration,
persistence and pace, and no more than one or two episodes of decompensation in a work or work-
like setting.  While at times plaintiff's depression appeared to have a very significant impact on her
functioning, these periods seemed to occur when she had stopped taking her medication and her

6

symptoms were responsive when medication was restarted.  As the administrative law judge noted, ending the long-term abusive relationship may also have been responsible for some of plaintiff's improvement.  In his findings, and in questioning the  vocational expert, the administrative law judge noted plaintiff's intellectual functioning and academic achievement scores as well as his determination that she was capable of handling simple and some limited detailed instructions/tasks. He also adopted the medical expert's assessment relative to the good and fair abilities she had in her work-related functioning.  After reviewing the entire record, the Court concludes that the administrative law judge's findings in this regard are supported by substantial evidence.

The administrative law judge also concluded that, physically, plaintiff could perform light level work not requiring sustained or repetitive overhead work, climbing of high ladders or working at unprotected heights or around heavy, moving or dangerous machinery/equipment.  She was also precluded from using handheld vibrating tools or being exposed to excessive floor vibration.   Postural activities, such as climbing stairs/steps/ramps, bending/stooping, crouching/squatting and kneeling/crawling could be done only occasionally and plaintiff could not perform repetitive operation of foot controlled equipment or be exposed to temperature extremes, damp-humid conditions or direct sunlight.  Given the relatively mild exam findings as well as the indication that plaintiff was active during the relevant period and did not report the extreme problems to her doctors that she alleged at hearing, the Court concludes the administrative law judge's findings as to her physical as well as mental impairments are also well supported by the evidence.

While plaintiff alleged significant limitations on her mental and physical functioning due to pain and depression, the administrative law judge, taking account of the evidence as well as

7

his observations of plaintiff at the hearing, concluded that her testimony was not entirely credible. He found persuasive the level of activities plaintiff reported during the relevant period even though she alleged she had been in continuous pain and suffered frequent crying spells that prevented her from doing much of anything for up to four days a week.  Inconsistent reports by plaintiff as to a number of facts also detracted from her credibility, in the administrative law judge's opinion.  In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight."  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  Finally, in response to hypothetical questioning which included plaintiff's age, education, work experience and a reasonably accurate profile of her functional capacity and overall medical condition, a vocational expert testified that there were significant numbers of light and sedentary jobs in the national economy which plaintiff could perform.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision.  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).  In the present case, the evidence, though somewhat conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's impairments and residual functional capacity.  Under such circumstances, the decision of the Commissioner should be affirmed.

# RECOMMENDATION

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.

DATED: May 8, 2006

MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE